IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| BARRET OLTMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| COLBERT COUNTY, ALABAMA; | ) CASE NO. |
| FRANK WILLIAMSON; ERIC | ) |
| BALLENTINE; MARCUS RUTLAND; | ) JURY TRIAL DEMANDED |
| JOSH SMITH; QCHC, INC.; DORIS | ) |
| PILKINGTON; JOHNNY BATES; and | ) |
| DONALD KERN, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff complains of defendants, stating as follows:

### INTRODUCTION

1. On or about May 31, 2023, Barret Oltmer was assaulted while he was in the Colbert County Jail.

2. Plaintiff was assaulted by one or more violent offenders, including Darecus Mason, a murder defendant, who had assaulted numerous individuals prior to assaulting James.

3. The assault resulted from a complete breakdown of security at the jail, where inmate-on-inmate assaults had become routine.

4. The dangerous conditions that led to the assault on plaintiff were well known to Colbert County officials, the sheriff (Williamson and then Ballentine), and the jail administrators (Rutland and Smith).

5. The dangerous conditions resulted in part from jail facilities that Colbert County officials have known for many years were inadequate to safely house inmates.

6. Defendants responded with indifference to the security crisis at the jail.

7. Defendants' apathy culminated in plaintiff being assaulted.

8. Plaintiff brings this action to redress his injuries and to end the abuse perpetrated on Colbert County inmates due to defendants' disregard for their safety.

## JURISDICTION AND VENUE

9. This action arises under the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983.

10. This Court has jurisdiction of plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of his state law claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper under 28 U.S.C. § 1391(b), as the majority of the defendants reside in this judicial district and the events and omissions giving rise to plaintiff's claims occurred within this judicial district.

## PARTIES

12.     Plaintiff Barret Oltmer is of legal age, a citizen, and a resident of the state of Alabama and Colbert County.

13.     Defendant Colbert County, Alabama is an Alabama county. It is responsible for funding the Colbert County Jail.

14.     Defendant Frank Williamson was the Colbert County Sheriff from 2015 to January 2023 and was responsible for establishing the policies and customs described below.

15.     Defendant Eric Ballentine was the Colbert County Sheriff at all relevant times. As the sheriff, among other things, he is responsible for management of the Colbert County Jail. Defendant has a statutory duty under Alabama law to attend to the medical needs of inmates in the jail. Defendant is sued in his official and individual capacities.

16.     Defendant Marcus Rutland was the jail administrator at all relevant times.

17.     Defendant Josh Smith was the assistant jail administrator at all relevant times.

18.     Defendant QCHC, Inc. is a private, for-profit corporation that contracted with Colbert County to provide medical services at the Colbert County Jail.

19. Defendant Doris Pilkington is a nurse and managed the medical care at the Colbert County Jail for QCHC.

20. Defendant Johnny Bates, M.D., is the owner and CEO of QCHC and provided physician medical services at the jail for QCHC.

21. Defendant Donald Kern, M.D., is the medical director for QCHC and provided physician medical services at the jail for QCHC.

22. Plaintiff sues each of the individual defendants in his or her individual capacity unless otherwise noted. Each of the individual defendants acted under color of law and within the scope of his or her employment when engaging in the misconduct described herein.

## FACTS

### The Assaults on Plaintiff

1. On or about May 31, 2018, plaintiff, a non-violent drug offender, was being housed in the Colbert County Jail.

2. Plaintiff was initially housed with violent offenders that operated as a gang with a cell boss. The inmates had weapons and openly smoked drugs.

3. When plaintiff expressed concern for his safety, he was moved into a 3-person cell.

4. Unbeknownst to Oltmer, he was moved into a cell with Darecus Mason, a known violent offender facing a murder charge to which he would ultimately plead guilty.

5. According to a witness, after the stabbing, Mason said, "l told you I was gonna kill a nigga. I told you I killed someone in prison."

6. For reasons unknown to plaintiff, Mason violently assaulted Oltmer with a broom handle, causing head trauma, and bit Oltmer on his chest and upper right arm, leaving scars that persist today.

7. Oltmer was taken to the emergency room.

8. When Oltmer returned to the jail, he was placed back in the section of the jail where he started, where he was beaten and stabbed by approximately 6 inmates.

9. Oltmer suffered further head trauma, stab wounds, a lost tooth, a groin injury, and a broken right wrist, among other injuries.

10. Oltmer did nothing to provoke the assault.

11. Oltmer was a non-violent inmate. He was arrested on a drug charge.

12. Oltmer had been housed previously in the jail and was known not to cause trouble.

13. Before plaintiff was assaulted, there had been numerous inmate-on-inmate assaults.

14. Defendants Williamson, Ballentine, Rutland, and Smith routinely housed non-violent inmates like plaintiff with murder defendants and other violent inmates.

15. Plaintiff suffered traumatic and serious physical and emotional injuries as a result of the assault.

### The Colbert County Jail Is Unsafe for Inmates

16. The Colbert County Jail, though built in 1962 to handle 62 inmates, for decades has been routinely handling 100-125 inmates.

17. Colbert County officials have recognized the need for a new jail facility for decades.

18. By the 1970s, it was recognized that the jail was not built large enough in the first place and was clearly inadequate to safely house 100-125 inmates.

19. Because of the limitations of the facilities, jail personnel are limited in their ability to protect non-violent inmates from dangerous inmates.

20. These limitations were known to Colbert County officials for decades. Nevertheless, with deliberate indifference, Colbert County did not address the problem.

21. Defendants Williamson, Ballentine, Rutland, and Smith, acting with deliberate indifference, routinely housed dangerous inmates, including murder defendants, in crowded conditions with non-violent inmates like plaintiff.

22. Defendants Williamson, Ballentine, Rutland, and Smith, acting with deliberate indifference, established an unreasonable and longstanding policy of not identifying and segregating inmates known or likely to be perpetrators of assaults.

23. Plaintiff was assaulted by an inmate who had already displayed violent behavior with other inmates, who was in jail for a violent offense, and who was part of a violent clique that dominated the section of the jail in which plaintiff was housed.

24. Long before the assault, Colbert County officials, Williamson, Ballentine, Rutland, Smith, and others, were aware that assaults were a serious problem.

25. Nevertheless, defendants Williamson, Ballentine, Rutland, and Smith failed to promulgate, implement, and enforce adequate policies, procedures, and practices necessary to adequately supervise and monitor the housing units to maintain the safety of inmates therein.

26. The jail was both dangerously overcrowded and dangerously understaffed at the time plaintiff was attacked, putting inmates such as plaintiff at substantial risk of harm.

27. Defendants also fueled a culture of violence by failing to discipline or prosecute inmates for violent acts.

28. Defendants failed to adequately and effectively separate violent inmates even though they knew that the failure to do so had contributed to violence in the past.

29. These failures emboldened assault perpetrators, leading them to understand that they could assault other inmates with impunity and creating a substantial risk of harm to inmates such as plaintiff.

### Defendants' Policies and Practices Regarding Drug Dependence

30. Plaintiff has a history of drug problems and took methadone through a clinic at the time of his arrest.

31. During booking Oltmer underwent a medical screening and reported his long history of methadone use.

32. The Colbert County Jail, however, is a "no narcotics jail." Jail policy, based entirely on non-medical concerns related to the dispensing of narcotic medications at the jail, prohibits, without regard to inmate medical needs, the administration of narcotic medications such as opiates and benzodiazepines, which are commonly used to provide medical support to persons experiencing or likely to experience drug withdrawal.

33. Pursuant to this policy, plaintiff was not identified as a risk for withdrawal, did not receive any medication to prevent withdrawal, did not receive any medication or other treatment to assist him with withdrawal, and did not have

his withdrawal monitored. Rather, plaintiff was forced to withdraw cold turkey in a general population cell.

34. Inmates taking methadone, Xanax, and other medications with potentially-dangerous withdrawal complications are common at the jail.

35. Pursuant to the jail's no-narcotics policy, inmates withdrawing from opiates, benzodiazepines, and other drugs at the Colbert County Jail are routinely allowed to suffer, without any medical support, for extended periods of time, at most being taken to the emergency room after their condition has severely deteriorated.

36. This is contrary to the standard of care for jails.

37. This custom and policy constitutes deliberate indifference because it inflicts needless suffering on inmates.

38. This custom and policy constitutes deliberate indifference because it places inmate health and safety at risk from known complications of opiate and benzodiazepine withdrawal.

39. This is the custom and policy of Williamson, Ballentine, Rutland, Smith, QCHC, Pilkington, Bates, and Kern.

40. While opiate withdrawal alone is not ordinarily fatal, if the symptoms of withdrawal are not treated (i.e., lack of appetite, nausea, vomiting), serious complications, including body chemical and mineral (electrolyte) disturbances, can result.

## CLAIMS

### Count I - 42 U.S.C § 1983
### Failure to Protect
### Against Colbert County, Williamson, Ballentine, Rutland, and Smith

41. As explained above, defendants were deliberately indifferent to plaintiff's safety.

42. Pursuant to the Eighth and Fourteenth Amendments of the United States Constitution, plaintiff is entitled to be free from a known and unreasonable risk of serious harm while in jail.

43. Defendants, acting individually and in conspiracy with other defendants, failed to protect plaintiff.

44. Defendants knew of and consciously disregarded the substantial risk that plaintiff would be injured while incarcerated, failing to protect him from harm.

45. The misconduct described in this count was undertaken with deliberate indifference, malice, willfulness, and/or reckless indifference to the rights of plaintiff and others and was objectively unreasonable.

46. Defendants' misconduct directly and proximately caused plaintiff to be subjected to an unreasonable risk of serious harm, and caused him to suffer damages including pain, suffering, fear, anxiety, rage, and other harmful physical and psychological harms, both from the brutal assaults and its devastating aftermath.

## Count II - 42 U.S.C § 1983
### Denial of Care for a Serious Medical Need Against Williamson, Ballentine, Rutland, Smith, QCHC, Pilkington, Bates, and Kern

47. As explained above, defendants were deliberately indifferent to inmates who were dependent on prescription drugs such as methadone.

48. As a result of Oltmer's methadone dependence and subsequent severe withdrawal symptoms, plaintiff had an objectively serious need for health care.

49. Defendants had notice of plaintiff's health care needs and the seriousness of his health care needs, and yet, they failed to provide him with necessary health care, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

50. The misconduct described in this count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and/or deliberate indifference to the rights of plaintiff.

51. The denial of medical care was pursuant to a policy or custom of QCHC, Bates, and Kern.

52. Because of defendants' unjustified and unconstitutional conduct, plaintiff suffered damages, including physical and emotional harm.

**Count III - Medical Negligence – Against QCHC, Pilkington, Bates, and Kern**

53. As explained above, defendants ignored the standard of care for inmates who are dependent on prescription medications such as methadone.

54. Between approximately May 27 and June 15, 2023, defendants failed to meet the standard of care for similarly-situated healthcare providers regarding plaintiff's care and condition, including failing to properly assess and treat plaintiff's condition.

55. Each of these failures resulted in plaintiff experiencing unnecessary suffering.

56. QCHC nurses, aids, charge nurses, physicians, and other care providers, including the named defendants, acted as employees or agents of QCHC, and within the line and scope of their employment or agency and/or for the benefit of QCHC. Therefore, QCHC is liable under agency principles.

57. A reasonably prudent healthcare provider to inmates at a correctional facility such as QCHC, operating under the same or similar conditions, would not have failed to provide the care listed above. Each of the foregoing acts and patterns of negligence on the part of these defendants, operating separately or in combination with other defendants jointly and cumulatively, proximately contributed to cause plaintiff's suffering.

## RELIEF SOUGHT

58. As relief, plaintiff seeks the following:

    a. Appropriate declaratory and injunctive relief to remedy the unlawful policies and customs at the jail;

b. That plaintiff be awarded such compensatory damages as a jury shall determine from the evidence plaintiff is entitled to recover;

c. That plaintiff be awarded against the individual defendants only such punitive damages as a jury shall determine from the evidence plaintiff is entitled to recover;

d. That plaintiff be awarded prejudgment and postjudgment interest at the highest rates allowed by law;

e. That plaintiff be awarded the costs of this action, reasonable attorney's fees, and reasonable expert witness fees;

f. That plaintiff be awarded such other and further relief to which plaintiff is justly entitled.

## OTHER MATTERS

59. All conditions precedent to the bringing of this suit have occurred.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

**Dated: May 16, 2025.**

s/ Henry F. (Hank) Sherrod III
Henry F. (Hank) Sherrod III
No. ASB-1200-D63H
HENRY F. SHERROD III, P.C.
119 South Court Street
Florence, Alabama 35630
Phone: 256-764-4141
Fax: 877-684-0802
Email: hank@alcivilrights.com

Attorney for Plaintiff
