UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **BARRET OLTMER,**  **Plaintiff,**  v.  **COLBERT COUNTY ALABAMA,** *et al.*,  **Defendants.** | Case No. 3:25-cv-765-HDM |

**MEMORANDUM OPINION**

Barret Oltmer is suing numerous individuals and entities over his treatment while in the Colbert County Jail. (*See* Doc. 22). Specifically, he is suing Frank Williamson, Eric Ballentine, Marcus Rutland, Josh Smith, and Colbert County, Alabama for failing to protect him while in the Jail in violation of 42 U.S.C. § 1983 (Count I). (Doc. 20 at 17). He is also suing Ballentine, Rutland, Smith, Doris Pilkington, Johnny Bates, Donald Kern, and QCHC, Inc. ("QCHC") for denial of care for a serious medical need under Section 1983 (Count II). *Id.* at 18. Finally, he is suing QCHC, Pilkington, Bates, and Kern for medical negligence. *Id.* at 19. Four of those defendants—Bates, Kern, Pilkington, and QCHC—filed the pending motion to dismiss. (*See* Doc. 26).

## BACKGROUND

Oltmer pleaded the following relevant facts, accepted here as true:

Oltmer has a history of drug problems and took methadone through a clinic at the time of his arrest. (Doc. 20, ¶ 106). During booking, he underwent a medical screening and reported his long history of methadone use. *Id.*, ¶ 107. The Colbert County Jail (the "Jail"), however, is a "no narcotics jail." *Id.*, ¶ 108. Jail policy, based on non-medical concerns related to dispensing narcotic medications at the Jail, prohibits, without regard to inmate medical needs, the administration of narcotic medications such as opiates and benzodiazepines, which are commonly used to provide medical support to persons experiencing or likely to experience drug withdrawal. *Id.* Pursuant to this policy, Oltmer was not identified as a risk for withdrawal, did not receive any medication to prevent withdrawal, did not receive any medication or other treatment to assist him with withdrawal, and did not have his withdrawal monitored. *Id.*, ¶ 109. Rather, he had to withdraw cold turkey in a general population cell. *Id.*

Inmates taking methadone, Xanax, and other medications with potentially dangerous withdrawal complications are common at the Jail. *Id.*, ¶ 110. Pursuant to the Jail's no-narcotics policy, inmates withdrawing from opiates, benzodiazepines, and other drugs at the Jail are routinely allowed to suffer, without any medical support, for extended periods of time, at most being taken to the emergency room

after their condition has severely deteriorated. *Id.*, ¶ 111. This custom and policy inflicts needless suffering on inmates and places inmate health and safety at risk from known complications of opiate and benzodiazepine withdrawal. *Id.*, ¶ 113-14.

This is the custom and policy of Ballentine, Rutland, Smith, QCHC, Pilkington, Bates, and Kern. *Id.*, ¶ 115. Each defendant was aware of the longstanding policy and knew the serious risks it presented to drug-dependent inmates yet chose to continue the policy and its implementation at the Jail. *Id.*, ¶ 116.

While opiate withdrawal alone is not ordinarily fatal, if the symptoms of withdrawal (i.e., lack of appetite, nausea, vomiting) are not treated, serious complications, including body chemical and mineral (electrolyte) disturbances, can result. *Id.*, ¶ 117. On the second day of Oltmer's incarceration, he saw Pilkington, who, consistent with Jail policy, told plaintiff he would not receive any medication to keep him from withdrawing or to minimize the effects of withdrawal. *Id.*, ¶ 118. As a result, Oltmer suffered terrible withdrawal symptoms for days, including stomach issues, diarrhea, weakness, and shaking. *Id.*, ¶ 119.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "[C]omplaints alleging discrimination . . . must meet [this] plausibility standard . . . ." *Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935, 937 (11th Cir. 2011) (internal quotation marks omitted). "Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015) (internal quotation marks omitted). Similarly, a formulaic recitation of the elements of a cause of action is inadequate. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In considering the facts, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). And the plaintiff must merely produce enough facts to "raise a reasonable expectation that discovery will reveal evidence" of the necessary elements. *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556). The pleading standard "requires only a plausible short and plain statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). At this stage, the issue is "not whether [the plaintiff] will ultimately prevail . . . but whether his complaint

was sufficient to cross the federal court's threshold." *Id.* (internal quotation marks and citations omitted).

## DISCUSSION

Defendants Bates, Kern, Pilkington, and QCHC move for this court to dismiss Count II, denial of care, and Count III, medical negligence, against them. (*See* Doc. 26). For the reasons laid out below, Defendants' motion to dismiss is due to be **DENIED** on these counts.

**Count II: Denial of Care**

Under the Eighth Amendment's prohibition of "cruel and unusual punishments," jail personnel cannot act with deliberate indifference to the medical needs of inmates. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must show (1) "that [he] had a serious medical need," (2) "that the [jail] official acted with deliberate indifference to [his] serious medical need," and (3) that there is causation. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). The first prong is objective, in the sense that it looks to the inmate's actual medical condition; the second is subjective, in the sense that it looks to the official's state of mind. *Id.*

The Eleventh Circuit has recognized withdrawal as a serious medical need. *See Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010) (treating alcohol withdrawal as a serious medical need for purposes of a deliberate

indifference claim); *Morrison v. Washington Cnty.*, 700 F.2d 678, 686 (11th Cir. 1983).

Oltmer pleaded that he "has a history of drug problems and took methadone through a clinic at the time of his arrest." (Doc. 20, ¶ 106). He also pleaded that methadone has "potentially dangerous withdrawal complications," *id.*, ¶ 110, specifically alleging that "if the symptoms of withdrawal are not treated (i.e., lack of appetite, nausea, vomiting), serious complications, including body chemical and mineral (electrolyte) disturbances, can result," *id.*, ¶ 117. As a result of his withdrawals, Oltmer alleges that he "suffered terrible withdrawal symptoms for days, including stomach issues, diarrhea, weakness, and shaking." *Id.*, ¶ 119. These facts, taken as true, plausibly show that Oltmer had a serious medical need, thus satisfying the objective prong.

Under the subjective prong, deliberate indifference requires "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Goebert*, 510 F.3d at 1327 (alteration in original) (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005)).

To satisfy the first requirement, a plaintiff must plausibly allege facts showing "how [each of the] Defendants" would have had the "actual knowledge" alleged. *Harper*, 592 F.3d at 1234-35. "Each individual defendant must be judged separately

and on the basis of what that person knows." *Id.* at 1234 (quoting *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008)).

To satisfy the second and third requirements, the plaintiff must plausibly allege facts showing that each defendant disregarded that risk by conduct that is more than gross negligence. *See Goebert*, 510 F.3d at 1327. In the specific context of a claim arising out of the alleged denial of medical care, conduct that is more than mere negligence includes knowledge of a serious medical need and a failure or refusal to provide care. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). "However, medical treatment violates the Constitution only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Dang ex rel. Dang v. Sheriff, Seminole Cnty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). The subjective elements of a deliberate indifference claim ensure that accidental inadequacy, negligent diagnosis or treatment, and even medical malpractice are not actionable under Section 1983. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).

First, Oltmer has satisfied this pleading standard as to Pilkington. Oltmer pleaded that "[d]uring booking [he] underwent a medical screening and reported his long history of methadone use." (Doc. 20, ¶ 107). Presumably, Pilkington, as his treating nurse, *id.*, ¶ 18, saw this report. And if not, Oltmer alleges he discussed the

7

matter with her. *Id*. This plausibly alleges that Pilkington had actual knowledge of Oltmer's withdrawal symptoms. During Oltmer's conversation with Pilkington, she "told [him] he would not receive any medication to keep him from withdrawing or to minimize the effects of withdrawal." *Id*. "As a result, [Oltmer] suffered terrible withdrawal symptoms for days, including stomach issues, diarrhea, weakness, and shaking." *Id.*, ¶ 119. This plausibly alleges that, knowing of Oltmer's condition, Pilkington failed or refused to provide care, constituting disregard of a serious medical risk by more than gross negligence. Thus, Oltmer has plausibly alleged deliberate indifference against Pilkington.

     As to Bates and Kern, Oltmer pleads no facts showing their actual knowledge of his withdrawal symptoms. Oltmer merely states that "Defendants had notice of plaintiff's health care needs and the seriousness of his health care needs, and yet, they failed to provide him with necessary health care." *Id.*, ¶ 128. But this does not foreclose the possibility of supervisory liability.

     "Supervisory liability lies where . . . there is a causal connection between [unconstitutional] conduct and the defendant's actions." *Harper*, 592 F.3d at 1236. "[T]he causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights." *Id*.

     Oltmer pleaded that Bates "is the owner and CEO of QCHC and provided physician medical services at the jail for QCHC," *id.*, ¶ 20, and Kern "is the medical

director for QCHC and provided physician medical services at the jail for QCHC," *id.*, ¶ 21. This plausibly places both Bates and Kern in positions to define policy. Oltmer further alleged the following policy:

> The Colbert County Jail . . . is a "no narcotics jail." Jail policy, based entirely on non-medical concerns related to the dispensing of narcotic medications at the jail, prohibits, without regard to inmate medical needs, the administration of narcotic medications such as opiates and benzodiazepines, which are commonly used to provide medical support to persons experiencing or likely to experience drug withdrawal. . . . Pursuant to the jail's no-narcotics policy, inmates withdrawing from opiates, benzodiazepines, and other drugs at the Colbert County Jail are routinely allowed to suffer, without any medical support, for extended periods of time, at most being taken to the emergency room after their condition has severely deteriorated.

*Id.*, ¶ 108, 111. Oltmer pleaded that "[t]his is contrary to the standard of care for jails," *id.*, ¶ 112, "constitutes deliberate indifference because it inflicts needless suffering on inmates," *id.*, ¶ 113, and "places inmate health and safety at risk from known complications of opiate and benzodiazepine withdrawal," *id.*, ¶ 114. Oltmer specifically alleged that this was the policy of Bates and Kern, among others, *id.*, ¶ 115, and that his untreated withdrawal symptoms were a direct result of this policy, *id.*, ¶ 119. This plausibly alleges that Bates's and Kern's custom or policy directly resulted in deliberate indifference to Oltmer's constitutional rights.

As to QCHC, "[w]hen a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state. In so doing, it becomes the functional equivalent of the

municipality." *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (citations omitted). Thus, the private entity is liable under Section 1983 for an injury resulting from the performance of that function only if the injury resulted from the entity's "policy or custom." *Id.* (citing 42 U.S.C. § 1983). The court has already established that Oltmer pleaded that he suffered an injury and that injury resulted from the no-narcotics policy. *See supra*. The remaining question is whether he sufficiently pleaded that this was QCHC's policy or custom.

Oltmer pleaded that "QCHC, Inc. is a private, for-profit corporation that contracted with Colbert County to provide medical services at the Colbert County Jail." (Doc. 20, ¶ 18). Defendants Pilkington, Bates, and Kern all worked for QCHC. *Id.*, ¶ 19-21. And the aforementioned policy was "the custom and policy of . . . QCHC." *Id.*, ¶ 115. These facts, accepted as true, plausibly show that Oltmer's injury resulted from QCHC's policy or custom, satisfying the pleading requirement for a claim of deliberate indifference against QCHC.

Thus, Oltmer has plausibly stated a claim of deliberate indifference against each of Pilkington, Bates, Kern, and QCHC.

**Count III: Medical Negligence**

Next, Oltmer brings a claim of medical negligence against Pilkington, Bates, Kern, and QCHC.

Section 6-5-551 of the Alabama Code provides that any action against a healthcare provider for a breach of the standard of care is governed in all aspects by the Alabama Medical Liability Act (AMLA). Ala. Code § 6-5-551. Defendants argue that based on Section 6-5-551, Oltmer was required to comply with the heightened pleading requirements laid out in the AMLA. (Doc. 26-1 at 10-15).[1] This is incorrect.

The AMLA's heightened pleading standard does not apply in federal court. *Renney v. Alabama Dep't of Corr.*, No. 5:23-cv-00361, 2024 WL 4190873, at *13 (N.D. Ala. Sept. 13, 2024). When federal courts consider state law claims under either diversity jurisdiction or pendent jurisdiction, "'only substantive state law must be applied,' while 'federal law governs matters of procedure.'" *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1259 (11th Cir. 2015) (quoting *Lundgren v. McDaniel*, 814 F.2d 600, 605 (11th Cir. 1987)); *see also Hanna v. Plumer*, 380 U.S. 460, 465 (1965) ("[F]ederal courts are to apply state substantive law and federal procedural law."). "Thus, where a state employs a heightened pleading requirement, 'a federal court . . . should instead follow Fed. R. Civ. P. 8(a).'" *Palm Beach Golf*, 781 F.3d at 1260 (quoting *Caster v. Hennessey*, 781 F.2d

---

[1] The AMLA provides the following heightened pleading standard: "The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts. . . . Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted." Ala. Code 6-5-551.

11

1569, 1570 (11th Cir. 1986)). *See also Cohen v. Off. Depot, Inc.*, 184 F.3d 1292, 1296 (11th Cir. 1999), opinion vacated in part on other grounds on reh'g, 204 F.3d 1069 (11th Cir. 2000) (holding that a state statute's heightened pleading standard does not apply in federal court if it conflicts with Rule 8, and that where Rule 8 *allows* a case to proceed while the state statute *prevents* the case from proceeding, the two conflict). "[T]he United States Supreme Court has rejected a heightened pleading standard in federal court, except where such a requirement is specifically delineated by the federal rules." *Palm Beach Golf*, 781 F.3d at 1260 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), and holding that the district court's dismissal of the plaintiff's claim "on the basis that it failed to satisfy Florida's heightened pleading standard was error"). Thus, "Alabama's heightened pleading standard [under the AMLA] . . . does not apply in federal court," and the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure instead controls. *Renney*, 2024 WL 4190873, at *13.

Oltmer's allegations against Pilkington and QCHC meet Rule 8's pleading standard with regard to Count III for many of the same reasons that they meet the standard with regard to Count II. Oltmer alleges that Pilkington failed to treat Oltmer's withdrawal symptoms, (doc. 20, ¶ 118-19), in violation of the standard of care for similarly situated healthcare providers, *id.*, ¶ 132-33, causing Oltmer unnecessary suffering, *id.*, ¶ 134. Furthermore, Oltmer alleges that QCHC nurses,

12

aides, charge nurses, physicians, and other care providers, including the named defendants, acted as employees or agents of QCHC, within the line and scope of their employment or agency, and for the benefit of QCHC. *See Bain v. Colbert Cnty. Nw. Alabama Health Care Auth.*, 233 So. 3d 945, 955 (Ala. 2017) (finding that a hospital can be held vicariously liable for the acts of its employees). Therefore, Oltmer has plausibly pleaded that Pilkington and QCHC are liable for medical negligence.

Oltmer does not, however, meet Rule 8's pleading standard with respect to Bates and Kern. Although he alleges that Bates and Kern are both physicians and hold other roles within QCHC, *id.*, ¶ 20-21, Oltmer does not state that they were involved in his care in any way. Other than to state that there was a custom and policy of deliberate indifference and that "[t]his is the custom and policy of Ballentine, Rutland, Smith, QCHC, Pilkington, Bates, and Kern," *id.*, ¶ 114-15, Bates's and Kern's names do not come up. Instead, Oltmer makes the blanket allegation that "defendants failed to meet the standard of care for similarly situated healthcare providers regarding plaintiff's care and condition." *Id.*, ¶ 133. This is a legal conclusion and the court need not consider it. *See Wiersum*, 785 F.3d at 485. From the remaining allegations, it is unclear what exactly Bates and Kern are being sued for, including whether they are being sued under a theory of supervisory liability or

for their personal involvement in Oltmer's care. Oltmer fails to plausibly allege medical negligence against Bates and Kern.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, (doc. 26), is **DENIED** with respect to Pilkington on all counts, QCHC on all counts, Bates on Count II, and Kern on Count II, and it is **GRANTED WITHOUT PREJUDICE** with respect to Bates on Count III and Kern on Count III.

**DONE** and **ORDERED** on February 25, 2026.

_____
**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE